|1WALTZER, Judge.

STATEMENT OF THE CASE

Edward Drury brought this suit against his landlords, Philip and Caroline Kitchen, for damages sustained when the leased premises were burned as the result of an act of arson by third persons who set fire to a nearby storage shed.[1] The suit was tried before a jury in the Civil District Court for the Parish of Orleans, which returned a verdict finding that at the time of the fire neither the shed nor the yard separating the shed from the leased premises constituted a defective thing within the meaning of LSA-C.C. art. 2317, and that neither defendant was negligent under LSA-C.C. 2315 in the manner in which they maintained the shed or the yard. The trial court denied Drury’s motions for judgment notwithstanding the verdict and for a new trial. The jury’s verdict was made the judgment of the Court. From that judgment, Drury appeals. We find no reversible error in the verdict and judgment and we affirm.

STATEMENT OF FACTS

Drury leased from Kitchen office space which was located in approximately one-half of a building in which Kitchen had his own office. Prior to the fire, Kitchen moved his law office, but continued to use his former office and adjacent storage shed for storage of files, |2records, law books and furniture that did not fit in his new office. Kitchen’s former office contained a secretarial desk and chair, a small table, and credenza in one room. In another, he had two wing-back chairs and a plastic plant. In the room he had used as a library were several sets of current law books. In another room were a refrigerator, two or three file cabinets and a small sofa. Kitchen testified the furnishings and books were not discarded, but did not fit in his new office space. The shed, which was secured by a hasp but was not padlocked, contained four metal file cabinets and cardboard file storage boxes.
Kitchen’s maintenance man testified that he cut the grass and vines at the leased premises at regular two-week intervals, and, at the same time, cleaned the back yard area around the shed and the two-foot area between the shed and the main building.
Several neighbors testified that there was often debris in the front and alleyway of the property, which they attributed to the proximity of a bar, and one neighbor testified that she had seen a man either asleep, unconscious or dead on the grounds. None of these witnesses testified that the conditions of which they spoke existed either shortly before or at the time of the fire. None of these witnesses complained or reported any of these circumstances to Mr. Drury, Mr. Kitchen, the police, or any other agency.
On 24 September 1988, third persons set fire either in or next to the storage shed. George Hero, who was qualified as an expert in the cause and origin of fires, testified that the shed caught fire and the fire spread to Drury’s office in the main building. The expert testified that the radiant heat from *1288 the burning shed would have caused the main building to catch fire regardless of the presence or absence of grass, paper or trash in the yard. Merril Koenig, Jr., the New Orleans Fire Department’s arson investigator who came to the fire scene after the fire suppression force had brought the fire under control, agreed with Hero’s conclusion that the shed’s radiant heat would have caused the main building to burn with or without the presence of vegetation, paper or trash. The testimony of all experts called at trial agreed that the fire was caused by the intentional acts of third parties for whom Kitchen was not responsible.

|3JURY INSTRUCTIONS

Drury contends that the trial court erred in failing to give plaintiffs requested jury charges concerning violation of a safety statute. Plaintiff relies on two sections of the Southern Building Fire Prevention Code, 1985 edition (Exhibit G-3), which provide:
“Roofs, courts, yards, vacant lots and open spaces shall be kept free and clear of deposits or accumulations of waste paper, hay, grass, straw, weeds, litter or combustible waste or rubbish of any kind. All weeds, grass, vines or other growth, when same endangers property, or is liable to be fired, shall be cut down and removed by the owner or occupant of the property.” Section 502.1 — ACCUMULATIONS OF WASTE MATERIALS.
“Every person owning, or in charge or control of, any vacant building shall remove therefrom all accumulations of flammable or combustible waste or rubbish and shall securely lock, barricade, or otherwise secure all doors, windows and other openings therefrom. The premises shall be maintained clear of any waste or hazardous material.” Section 502.9 — VACANT STRUCTURES.
Esso Plaisance, qualified as an expert in the field of the Fire Codes of the City of New Orleans, was hired by Drury to testify concerning alleged Fire Code violations. Mr. Plaisance did not visit the site of the fire, and relied on interviews with people who said there were vines, grass and paper in the yard.[2] The expert did not offer a definition of the term “vacant” in Section 502.9, and apparently did not consider the uncontrovert-ed testimony outlining the contents of the former Kitchen office and the storage shed. Significantly, Plaisance clarified on cross-examination that it was not his testimony that vegetation growing around the building or the lack of a padlock on the shed or the storage of files therein caused the fire. He testified that he had no opinion concerning the cause of the fire. Plaisance also testified that he agreed with Hero’s and Koenig’s opinions that given the proximity of the shed to the main building, regardless of the presence of debris, paper, or vegetation, once the shed was set on fire, the main building, containing Drury’s office, would have burned.
|4The verdict of a jury will not be set aside by reason of an incorrect instruction absent a showing of prejudice such that the jury was misled to such an extent that it was unable to render a just verdict.
“In making his charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but rather, has a duty to charge the jury as to the law applicable to a case and, to accomplish this, has the responsibility to reduce the possibility of confusing the jury. Arnouville v. Joiner Enterprises, 423 So.2d 1246 (La.App., 5th Cir.1982). Further, as was stated by the Fourth Circuit in Brown v. White, 405 So.2d 555 (La.App. 4th Cir. 1981), appellate courts must exercise great restraint before overturning a jury verdict on the suggestion the instructions were so erroneous as to be prejudicial. The pertinent question involved in making the decision as to error is whether the jury was misled to such an extent as to prevent it *1289 from doing justice.” Cuccia v. Cabrejo, 429 So.2d 232, 235 (La.App. 5th Cir.1983), writ denied 434 So.2d 1097 (La.1983).
The trial judge is required to give instructions that are correct statements of applicable law “in light of the pleadings and facts in each ease.” Daigle v. Legendre, 619 So.2d 836, 839 (La.App. 1st Cir.1993), writ denied 625 So.2d 1040 (La.1993); see also, Kennedy v. St. Charles General Hospital Auxiliary, 630 So.2d 888 (La.App. 4th Cir. 1993), writ denied 634 So.2d 863 (La.1994). However, not all instructional error will justify reversal on appeal.
“The mere discovery of an error in the trial judge’s instructions does not, of itself, justify an appellate court conducting the equivalent of a trial de novo, without first measuring the gravity and degree of the error, and considering the instructions as a whole and the circumstances of the case.... In reviewing the record, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and facts.” Barnett v. New Orleans Public Service Inc., 489 So.2d 452, 455 (La.App. 4th Cir.1986).
As a reviewing court, we are further guided by the principle that the trial judge is not in error when he refuses to give a requested charge where such charge is included in his general charge. Id.
Applying this standard to the instant case, we find no reversible error in the trial court’s instructions. The trial court gave a full and correct charge on negligence under LSA-C.C. art. 2315, on strict liability under LSA-C.C. art. 2317, and on negligence arising from violation of a statute. The jury was charged that it must determine whether the defendants’ action which violated the statute was unreasonable under all of the circumstances and was a cause of the harm of which the plaintiff complains. The instruction properly defined |5proximate cause as it applies to statutory violations, and pointed out that violation of a statute, alone, does not warrant a conclusion of negligence. The record does not contain the plaintiffs requested charges; however, under the facts of this case, we find the trial court’s instruction satisfies the standard of appellate review.

THE JURY’S VERDICT IS NOT MANIFESTLY ERRONEOUS

The jury found, in response to special interrogatories, that at the time of the fire, neither the storage shed nor the yard constituted a defective thing within the meaning of LSA-C.C. art. 2317; further, Caroline and Philip Kitchen were not negligent under LSA-C.C. art. 2315 in the manner in which they maintained either the storage shed or the yard.
Our review of the record in its entirety convinces us that the jury’s findings are reasonable in light of that record. We are mindful of the standard of review of a jury verdict:
“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.... [A]ppellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.... When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.... [Where] a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
We are instructed that before a fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).
The record amply supports the jury’s verdict. The expert testimony was unani *1290 mous that the fire was caused by the intentional act of third parties for whom the defendants were not responsible. The jury resolved the conflicting testimony concerning the maintenance of the premises in favor of the defendants. The jury apparently accepted the expert testimony that the radiant heat generated by the fee set by the third persons would have caused the |6plaintiff's loss with or without the presence of vines, grass, paper or debris in the yard between the shed and the main building. We will not disturb that factual determination and the credibility determinations that underlie it. We find the jury’s verdict to be reasonable upon our review of the entire record.

JURY INTERROGATORIES CONCERNING RETURN OF RENT FOR PORTION OF RENTAL PERIOD FOLLOWING FIRE

Drury contends that the trial court erred in submitting to the jury interrogatories requiring the jury to find defendants liable to plaintiff before reaching the question of returning rent paid for the period from the date of the fire to 15 October, in the amount of $660. Drury did not specifically seek return of unearned rent in any of his five petitions. Neither did he object to the trial court’s interrogatories.
“It is well established that a party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires or immediately after the jury retires.” Futrell v. Scott Truck and Tractor Company of Louisiana, Inc., 629 So.2d 449, 455 (La.App. 3rd Cir.1993), writ denied 635 So.2d 232 (La.1994).
Plaintiffs failure to object specifically to the form of the interrogatories effectively waived his right to present this issue on appeal.

CONCLUSION

The trial court’s instructions to the jury were a fair statement of applicable law under the facts of this case, and did not confuse or mislead the jury or prejudice plaintiff; the jury’s verdict is reasonable in light of our review of the record in its entirety, and plaintiff waived his objection to the form of the interrogatories to the jury by having failed to object in a timely manner. The judgment based on the jury’s verdict is therefore affirmed.

AFFIRMED.

. Drury filed an original and four supplemental and amending petitions. The original petition alleged the landowner's negligence, and claimed loss of income, contents of the leased office, mental anguish, humiliation, court costs and expert's fees; the first supplemental petition added State Farm Insurance Company as a named defendant and asked for a jury trial; in the second supplemental petition, Drury pleads strict liability; in the third he claims breach of the lease contract by failure to maintain the grounds, which actions constituted unfair and deceptive trade practices, and alleges amicable demand; in the fourth, Drury alleges violations of the "National Fire Code” which constituted negligence perse. The trial judge dismissed the unfair trade practices claim contained in the third supplemental and amending petition prior to trial.

. The testimony concerning paper in the back yard came from arson inspector Merril Koenig, Jr., who came to the scene of the fire after the fire was under control. At the time he arrived on the scene, the shed was completely burned down, and the files contained therein, which were slower to burn than the shed structure, together with papers that had been thrown out of the main building by fire fighters in their fire suppression effort, were strewn about the yard. There was no evidence at trial that these files had been in the yard prior to the fire suppression effort.