668 So.2d 397 (1996)
Juliette E. GREEN
v.
USAA CASUALTY INSURANCE COMPANY, Central Claims Service, Inc., National Flood Ins. Co., Dr. Jim Keating, Jr., Dr. Don "Rock" Rowell, Cathy Gillepsy, Michael Laughlin, Bryan Sheffield and Julie Sheffield.
No. 95-CA-0742.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1996.
*398 Paul L. Katz, Katz, Johnson and Collins, Covington, Louisiana, and James A. Gray, II, Elie and Gray, New Orleans, Louisiana, for Plaintiff-Appellant.
Kathryn T. Wiedorn, Thomas G. Buck, Blue Williams, L.L.P., Metairie, Louisiana, for Defendants-Appellees.
Timothy G. Schafer, Schafer & Schafer, New Orleans, Louisiana, for Defendants-Appellees.
C. Gordon Johnson, Jr., Charles L. Chassaignac, IV, Porteous, Hainkel, Johnson & Sarpy, New Orleans, Louisiana, for Defendants-Appellees.
Before KLEES and BYRNES and LANDRIEU, JJ.
BYRNES, Judge.
Plaintiff, J.G., was raped by an unknown assailant not a party to these proceedings. She sued numerous defendants, alleging that were it not for their negligence the rape would not have occurred. By the time the case went to the jury, the only defendants remaining were Dr. James Keating, George Grunewald, Michael Laughlin, and their insurers, United Services Automobile Association and State Farm General Insurance Company. Plaintiff on this appeal does not complain about the dismissal of any of the other defendants.
Dr. James Keating was the lessee of the premises where the rape occurred. He was allowing the plaintiff to live there as his guest. Plaintiff alleged that Dr. Keating failed to check to see if a sliding glass door through which the rapist gained access was locked. Dr. Keating responded that the plaintiff should have checked herself and that he owed her no duty. Plaintiff alleged that *399 George Grunewald was negligent in failing to lock the door after he finished doing flood repair work on the premises. Plaintiff alleged that Michael Laughlin was responsible because he was the contractor who hired George Grunewald to do the flood repair work. The jury found no fault on the part of the defendants. Judgment was rendered dismissing plaintiff's claim against all defendants in accordance with the findings of the jury. Plaintiff appeals. We affirm.
The trial court issued jury interrogatories calling for a comparison of the fault of the unknown rapist to that of the plaintiff and the defendants. These interrogatories are the sole error urged by plaintiff on appeal.
Plaintiff relies on Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La. 11/30/94), 650 So.2d 712. In Veazey the court held that "it was not error for the trial judge in this case to refuse to submit a special interrogatory to the jury for comparison of [the defendant's] and the rapist's respective fault." The Veazey court did not specifically hold that it would have been error had the trial court presented the jury with a special interrogatory, but the implication is very strong. The Veazey court held that in the case before it the comparison of the rapist's fault with that of the defendant "is not appropriate." From this we infer that under the Veazey facts had the trial court issued instructions comparable to those now before this Court the Veazey Court would have found error. In footnote 13 at 650 So.2d 720 the Veazey court stated that:
[S]ubmission of such an interrogatory in a strict liability case or an intentional tort case [emphasis added] only becomes appropriate [emphasis original] where the trial court has determined that the public policy bases discussed herein are not present.
This court infers that what the Veazey court would call "inappropriate" is equivalent to error. Therefore, this court must determine whether the jury instructions given in this case were "inappropriate" under Veazey and, therefore, erroneous, and if so whether such error was harmless or whether such error was reversible.
The Veazey court held at 650 So.2d 720 that when deciding whether "to allow comparison of fault between intentional tortfeasors and negligent tortfeasors, determination of whether such a comparison should be made must be determined by the trial court on a case by case basis, bearing in mind the public policy concerns discussed herein." [Emphasis added.]
The Veazey court listed three categories of public policy concerns that should be considered by the trial court when making its determination:[1]
1. Does the scope of the duty to the plaintiff encompass the exact risk of the occurrence which caused damage to the plaintiff? The Veazey court found that "as a general rule ... negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent." Veazey, 650 So.2d at 719.
2. Will the application of comparative fault principles reduce the incentive of the negligent tortfeasor to protect against the same type of situation occurring again in the future "given the fact that any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor"? Id.
3. Because the natures of intentional torts and negligent torts are fundamentally different, is this one of those many circumstances when a true comparison of fault between the two just is not possible? Id.
Since the Louisiana Supreme Court in Veazey stated that the trial court should consider these three categories of public policy concerns, this Court concludes that such consideration should be on the record. Otherwise the appellate courts would have no means of reviewing the manner in which the trial court considered these Veazey guidelines, or whether they were considered at all. This court finds no evidence in the record *400 that would tend to show that the trial court gave consideration to any of the above three categories. We infer from the jury interrogatories that it did not. This does not necessarily mean that the trial court reached the wrong result. It means that this Court must determine on its own how these three public policy considerations impact the result reached in this case.
Taking the three categories in reverse order from the simplest to the most complex we find nothing to distinguish this case from Veazey on the question of the comparison of the fault of the alleged rapist with that of the alleged negligence of the defendants. Following Veazey we are constrained to find that no such comparison can be made.
Secondly, we find that to allow the jury to compare the negligence based alleged fault of the defendants to the shocking intentional harm inflicted by the rapist would inevitably result in any rational juror apportioning the lion's share of the fault to the rapist. This would reduce the incentive of the defendants to protect against the same type of situation occurring again in the future, assuming for purposes of argument that the defendants owed the duties that plaintiff alleges were owed to her. We find that such a result would be contrary to the second public policy standard enunciated in Veazey.[2]
Thirdly, we find that the duty to lock the sliding glass door, if such a duty existed and was violated, encompassed the exact risk of the occurrence which caused damage to the plaintiff. As our holding will indicate, we do not have to decide whether such a duty exists in this case. Applying the first of the Veazey public policy standards, based on an assumption of a violated duty to lock the door, the negligent defendants should not be allowed to reduce their fault by the intentional tort of the rapist that they had a duty to prevent.
Based upon the foregoing analysis of the Veazey factors, we must conclude that to compare the intentional fault of the rapist with that of the allegedly negligent defendants in the instant case would be inappropriate and erroneous.
Having determined that such a comparison is inappropriate in the instant case, the question then becomes one of whether the trial court's jury instructions caused the jury to make such an inappropriate comparison. We find that the jury instructions did not.
The interrogatories and the answers given by the jury are as follows:
*401
No. 1 Was Juliette Green raped by an unidentified
 attacker on April 5, 1988?
 Yes X No ___
 If your answer to interrogatory No. 1 is
 YES, proceed to Interrogatory No. 2.
 * * *
No. 2(A) At any time pertinent to the incident
 was Dr. James Keating at fault?
 Yes ___ No X
 * * * * *
 If your answer to Interrogatory No.
 2(A) is NO, proceed to Interrogatory
 No. 3.
 * * * * *
No. 3(A) At any time pertinent to the incident
 was George Grunewald at fault?
 Yes ___ No X
 * * * * *
 If your answer to Interrogatory No.
 3(A) is NO, proceed to Instructions.
 * * * * *

INSTRUCTIONS
If you were not required to answer Interrogatories Nos. 2(B) and 3(B) or if your answers to Interrogatories nos. 2(B) and 3(B) were NO, proceed no further. Have the foreperson sign and date the interrogatory sheet and return to the courtroom.
 If your answer to either Interrogatory
 No. 2(B) or No. 3(B) is YES, proceed to
 Interrogatory No. 4.
No. 4(A) Was an unidentified attacker at fault?
 Yes ___ No ___
 If your answer to Interrogatory No.
 4(A) is YES, proceed to Interrogatory
 No. 4(B).
 * * * * *
No. 4(B) Was the fault of the unidentified attacker
 a proximate cause of any damages
 sustained by Juliette Green?
 Yes ___ No ___
 * * * * *
No. 6 Please state in percentages the degree
 of fault, if any, that any of the following
 individuals contributed to damages sustained
 by Juliette Green.
 a) Dr. James Keating ______%
 b) George Grunewald ______%
 c) Unidentified attacker ______%
 d) Juliette Green ______%
 (Total of "a" through "d" 100%
 must equal 100%)
 * * * * *
When the jury was asked in the second and third interrogatories whether the defendants were at fault, the jury answered, "NO." Up to this point in the interrogatories there was no reference to the allocation of fault to the rapist. Significantly, after these two "NO" answers the jury is instructed to "proceed no further" (emphasis added) with the interrogatories. Reference is made to the attribution of fault to the rapist only in that portion of the interrogatories that the jury has been instructed to avoid in consequence of answers to the second and third interrogatories. Although it is possible that the jury may have glanced at the interrogatory referring to the rapist, there is nothing in the record that would tend to prove that the jury proceeded contrary to the instructions contained in the interrogatories to a comparative evaluation of the fault of the rapist. There is nothing inconsistent in the findings of the jury that would furnish a basis for this Court to suspect that the last three interrogatories which the jury was instructed not to consider in consequence of its answers to the first three, somehow confused or improperly influenced the jury and caused it to render an erroneous verdict.
The interrogatories indicate that the jury decided the question of defendant fault prior to and independent of any consideration of the fault of the rapist. Based on the record before us we can only conclude that the fault of the rapist was not a factor considered by the jury when it decided that there was no fault on the part of the defendants. In the absence of evidence to the contrary, this Court must assume that the jury followed the instructions of the trial court not to proceed *402 to a consideration of the fault of the rapist after determining that the defendants were not at fault. If there was error in the latter portion of the jury instructions concerning the fault of the rapist, it was harmless because that portion of the jury instructions was never considered by the jury:
The verdict of a jury will not be set aside by reason of an incorrect instruction absent a showing of prejudice such that the jury was misled to such an extent that it was unable to render a just verdict.
* * * * * *
The mere discovery of an error in the trial judge's instructions does not, of itself, justify an appellate court conducting the equivalent of a trial de novo, without first measuring the gravity and degree of the error, and considering the instructions as a whole and the circumstances of the case... In reviewing the record, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and facts.
Drury v. Kitchen, 95-0410 (La.App. 4 Cir. 11/17/94), 645 So.2d 1286, 1288, 1289, writ denied 94-3098 (La. 2/9/95), 649 So.2d 425.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
KLEES, J., concurs.
LANDRIEU, J., concurs in result.
KLEES, Judge, concurring.
The majority opinion in this matter apparently concludes that since the three public policy considerations enumerated in Veazey v. Elmwood Plantation Associates, Ltd. 93-2818 (La. 11/30/94), 650 So.2d 712 were not on the record in this matter, we are compelled to consider these on our own. I disagree. The judgment in this matter was rendered March 15, 1994, approximately 8 months before the Supreme Court's original opinion in Veazey. The Veazey Court held that a trial court must determine, on a case-by-case basis, whether it is "appropriate" to submit to the jury an interrogatory requiring them to compare the fault of an intentional tortfeasor with that of a negligent tortfeasor. There is nothing in the record to suggest that the trial court did not make such a value judgment in the instant case, even though the specific policy considerations enumerated in Veazey do not of course appear in the record. I therefore do not believe it was error for the trial court to submit the jury interrogatory in this case.
Moreover, I find that the public policy "concerns" enumerated in Veazey show a disturbing lack of respect for the heretofore unassailable status of the jury as ultimate factfinder and decision-maker in our legal system. I do not agree with the Veazey Court that public policy is affronted because "any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare" the fault of, say, a rapist, with that of a negligent landlord. Relying on the rationality of jurors is not an affront to public policy; rather, it is the basis of our legal system. I believe, along with the dissenting justices in Veazey, that jurors are perfectly capable of comparing intentional fault and negligent fault in this type of situation, and that such a comparison will yield an appropriate result.
Because the majority in the instant case has concluded that the submission of the interrogatory was harmless error and I conclude that it was not error at all, I respectfully concur in the result reached.
NOTES
[1] We note that the trial court did not have the benefit of Veazey when this judgment was rendered. However, as Veazey represents an interpretation of existing law rather than a change in the law we feel bound to follow it.
[2] The application of this second standard worked in Veazey and would work in this case where the rapist is absent and unavailable for contribution and is probably judgment proof. However, this second Veazey public policy standard raises some troubling questions. Its reasoning would apply regardless of the ability of the intentional tortfeasor to respond in judgment. It would not be at all unusual in a child molestation case, for example, to have a situation in which the intentional tortfeasor was present and solvent. In such a case if it were determined that the molestation could have prevented but for the negligence of another defendant who breached some duty to the child, is it good public policy to reduce the proportion of responsibility allocated to the intentional tortfeasor just so that we can discourage future negligence. Is not the reason the "rational juror" referred to in Veazey likely to assign the "lion's" share of responsibility to the intentional tortfeasor because society and, therefore, public policy as the expression of the feelings of society is far more outraged by the intentional act than the negligent act. However, we are bound by Veazey to frustrate the "rational juror" and enforce a public policy that seems contrary to public opinion.

Following the reasoning of the second public policy consideration expressed by Veazey, it appears that the only way to discourage both the negligent tort and the intentional tort would be to allow the plaintiff to recover his damages from both the intentional and the negligent tortfeasors, resulting in a recovery of 200% or more of actual damagesa result that has no basis in law.
Thus where both the negligent tortfeasor and the intentional tortfeasor are present as defendants a comparison of their faults seems unavoidable with the predictable result that the lion's share of the fault will be apportioned to the intentional tortfeasor. This raises another problem in the application of the second Veazey standard. In effect, it would mean that the percentage of fault would be determined not by the nature of the actions of the tortfeasors, but by whether the intentional tortfeasor can be effectively sued. Fault would then be a question of solvency, which is not an acceptable result. Justice Calogero's concurring opinion in Veazey would eliminate these potential inconsistencies, although the "rational juror" might find it hard to accept.