731 So.2d 438 (1999)
Shirley POSECAI
v.
WAL-MART STORES, INC. d/b/a Sam's Wholesale Club and Joe Doe.
No. 98-CA-1013.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
Writ Granted June 25, 1999.
*440 Frederick R. Campbell, Geoffrey J. Orr, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, Louisiana, Attorney for Appellant Wal-Mart Stores, Inc.
Angela C. Imbornone, J. Paul Damarest, Favret, Demarest, Russo & Lutkewitte, New Orleans, Louisiana, Attorney for Appellee Shirley Posecai.
Panel composed of Judges H. CHARLES GAUDIN, JAMES L. CANNELLA and MARION F. EDWARDS.
CANNELLA, Judge.
Defendant, Wal-Mart Stores, Inc. d/b/a/ Sam's Wholesale Club (Sam's), and plaintiff, Shirley Posecai, appeal a judgment for damages sustained by plaintiff, when she was robbed at gunpoint in Sam's parking lot in Kenner, Louisiana. We affirm in part, amend in part and affirm as amended.
On June 20, 1995, plaintiff was shopping at Sam's store in Kenner. She left the store to go to her car at approximately 7:20 p.m. When she reached her vehicle, she was robbed at gunpoint by an unknown man who was hiding under her car. He grabbed her ankle and pointed the gun at her instructing her to turn over her jewelry and wallet. Terrified for her life, plaintiff complied, begging him not to kill her. Plaintiff, who had attended a downtown luncheon earlier, was wearing her most valuable jewelry, a two and one-half carat diamond ring given to her by her husband for their 25th wedding anniversary, a diamond and ruby bracelet and a diamond and gold watch, all valued in excess of $18,000. After pleading for her life, the thief released her and she ran to the exit door of the store, beating on the glass to attract attention. The Kenner police investigated the incident, but the perpetrator was not apprehended and her jewelry and wallet were not recovered, although plaintiff and her son-in-law searched various pawn shops.
Plaintiff filed her petition against Sam's on November 22, 1995 for property damages and for mental anguish. Following the judge trial on June 5, 1998, the trial judge found in favor of plaintiff and awarded her $18, 968 for her lost jewelry and $10,000 for general damages for mental anguish. He further found Sam's 75% at fault and the unknown perpetrator 25% at fault.
On appeal, Sam's contends that the trial judge erred in finding that it owed a duty to provide security to the parking lot. Sam's next asserts that the trial judge erred in relying on the plaintiff's expert. Third, Sam's asserts that the trial judge erred in awarding plaintiff $10,000 in general damages when she received no physical injury and received no counseling.
*441 Also, plaintiff appeals the allocation of fault between Sam's and the criminal perpetrator.

SAM'S APPEAL
Sam's first asserts that the trial judge manifestly erred in finding it at fault. It contends that the evidence shows that Sam's parking lot and the store are not high crime areas. Furthermore, it argues that the trial judge should not have relied on the expert's testimony because it was unreliable.
Officer Emile Sanchez, the policeman on duty in the store, testified that he had worked the detail since 1986. His duty was to secure the cash office. The officer called the Kenner police when the incident occurred. He stated that plaintiff was very upset. Officer Sanchez stated that he was not aware of any similar incidents and did not consider the Sam's parking lot to be a high crime area. However, he noted that he had not done any research on this point.
Officer Russell Moran testified that he patrolled the area around Sam's from 1993 until 1995. He stated that the subdivision behind Sam's is considered a high crime area. He said that Lincoln Manor Subdivision has much drug activity, robberies, thefts, batteries, stabbings, shootings and gambling. He noted, however, that the Kenner police patrols rarely got a call for problems specifically at Sam's.
Officer George Ansardi also patrols the area around Sam's and was the investigating officer for this incident. He also stated that Sam's is located in a high crime area, but that Sam's is not a high crime location.
David Kent (Kent), an ex-police officer with a safety consulting firm, was qualified as an expert in criminal risk assessment and premises and safety security. He reviewed the deposition of Sam's regional loss prevention supervisor, the pleadings and three law enforcement data reports of historical criminal activity. He reviewed both the Kenner Police Department and the Jefferson Parish Sheriff's Office reports. He looked at a grid area around Sam's bounded by Loyola, Lincoln Manor Subdivision, the I-10 and another street. He also went to the location and drove around the area. His analysis focused on predatory crimes. Kent admitted that he was unable to make a comparison between other grid areas in Kenner because of problems with the Kenner Police Department reporting system and the general uncooperative attitude of the department to providing information to outside inquirers. However, he said that his results are valid based on the other factors he considered.
There are numerous other businesses near Sam's on Loyola Drive, including convenience stores and gas stations. Kent analyzed the predatory criminal activity around those businesses. Between 1989 and June 20, 1995, there were 83 violent crimes against persons and 76 robbery related crimes, including armed robbery. Narrowing the focus, the reports showed that in that time period, there were five predatory incidents on Sam's property. On March 20, 1989 and February 4, 1990 simple robberies were reported. In February of 1991 an armed robbery occurred. In May of 1992 there was another simple robbery. On February 7, 1994, a purse snatching was reported. The purse snatching may have been related to a domestic dispute, although that was never proven.
There are no barriers between Sam's and Lincoln Manor Subdivision. In the entire grid area, which includes the subdivision, there were 6 robberies and 90 property offenses called into the police, 19 in the 2 years predating this incident. Kent testified that these figures show that Sam's is within walking distance of a fertile criminal offender population. He noted that the police officers believe that Sam's is in a high crime area.
Kent testified that Sam's took remedial measures in response to this incident by instituting roving patrols in the parking lot *442 and installing outside closed circuit television cameras to scan it.[1] He said that these measures were discussed and recommended in a national Sam's study done in 1994 in response to concerns about the safety of the store patrons in parking lots in metropolitan areas. Those measures were in fact implemented and, as a result, it was shown that crime went down on the Sam's properties. Beau Landry, the Sam's regional loss prevention supervisor, corroborated this. In addition, Kent noted that, until this incident, Sam's had no system of reporting and tracking criminal incidents or complaints on the property and there was no policy of any kind aimed at preventing criminal incidents.
After reviewing the totality of the information, Kent concluded that Sam's location is a high crime area and that the armed robbery against plaintiff was foreseeable because of the character of the neighborhood. He further concluded that security measures should have been undertaken because, more likely than not, some type of outside monitoring of the parking lot would have prevented the incident.
In order to determine whether liability exists under the facts of a particular case, Louisiana courts apply a duty-risk analysis. Under this analysis plaintiff must prove:
(1) the conduct in question was the cause-in-fact of the resulting harm,
(2) defendant owed a duty of care to plaintiff,
(3) the requisite duty was breached by the defendant, and
(4) the risk of harm was within the scope of protection afforded by the duty breached.
Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La. 1993). Whether a duty is owed is a question of law, whereas whether Sam's has breached a duty owed is a question of fact. Id. at 813.
In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. Mundy v. Department of Health and Human Resources, 620 So.2d at 813; Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1369 (La.1984). This duty does not extend to unforeseeable or unanticipated criminal acts by third persons, but when the owner or operator of a facility has assumed a duty to protect others against such criminal misconduct, liability may be created by a negligent breach of that duty. Mundy v. Department of Health and Human Resources, 620 So.2d at 813; Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d at 1369; Romaguera v. Piccadilly Cafeterias, Inc., 94-374 (La.App. 5th Cir. 12/14/94), 648 So.2d 1000, writs denied, 95-0093 (La.3/10/95), 650 So.2d 1183 and 95-0124 (La.3/10/95), 650 So.2d 1184; Hanewinckel v. St. Paul's Prop. & Liability, 611 So.2d 174, 179 (La. App. 5th Cir.1992), writ denied, 614 So.2d 65 (La.1993). Furthermore, "If the place or character of his business, or his past experience, is such that he [the proprietor] should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) of Torts Sec. 344 comment (f) (1965); Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813-814 (La.1993).
In Romaguera a restaurant patron was shot by an unknown assailant in the restaurant's parking lot. The patron brought a negligence action against the restaurant for failing to provide parking lot security. The restaurant had previously had an attempted armed robbery in the restaurant and because of that, had an armed security guard stationed only at the cash register. *443 It had no security in the parking lot and no policy or procedures for dealing with patron security. Although there was evidence that the restaurant itself was considered low risk, the statistics showed that there were a lot of weapons and predatory offenses within the particular grid surrounding the restaurant and within a two mile area. After reviewing the jurisprudence, we affirmed liability, noting that, "In the modern urban environment a business which undertakes to provide parking for its customers should determine whether security is required for the parking area and, if so, should ensure that adequate security is provided. Increased expense is a small sacrifice to make for protection of human life." Romaguera v. Piccadilly Cafeterias, Inc. 648 So.2d at 1005.
The facts in Piccadilly, while not exact, are similar to this case. Here, the store hired a detail officer to park his vehicle in front of the store as a visible deterrent to criminals. However, the officer was stationed only at the cash office. Thus, Sam's undertook a duty to provide security. The question, then is whether Sam's breached its duty to its patrons, and to plaintiff in particular.
Like the Piccadilly case, Sam's had no policy or procedures related to patron safety in or out of the store. Three police officers stated that Sam's is in a high crime areas, although the facility itself is not considered specifically a high crime location. Plaintiff's expert studied the grid containing Sam's and researched the area around the grid. He concluded that Sam's is in a high crime area and, because of the character of the neighborhood, an armed robbery in the parking lot was both foreseeable and preventable.
Sam's contends that the expert's testimony in this case should not be considered, citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), adopted by Louisiana in State v. Foret, 628 So.2d 1116 (La.1993). However, the issue in those cases was the admissibility of certain types of evidence used by the expert as the basis for the opinion. In both cases, there was some question as to whether the basis for the opinions were reliable. That is not the complaint here. Here, Sam's is actually objecting to the expert's methods to reach his conclusions and to the conclusions expressed by the expert. However, no objection was made to the qualification of Kent as an expert in the field. Thus, any objection to Kent's testimony is waived. See: Trans-Global Alloy Ltd. v. First Nat. Bank of Jefferson Parish, 583 So.2d 443, 448-449 (La.1991).
In addition, the trial court has great discretion whether to qualify an expert witness and has wide latitude whether an expert has the competence, background and experience to qualify. Mitchell v. Popiwchak, 95-1423 (La.App. 4th Cir. 6/26/96), 677 So.2d 1050, 1054. Once the expert is permitted to testify in his field, the trier of fact has great discretion as to accept or reject the expert's opinion, which goes to the credibility of the witness. Bordelon v. Drake, 578 So.2d 1174 (La.App. 5th Cir.1991). Included in the credibility determination is the method in which the expert reached his conclusions. Here, the trial judge considered all of the evidence. After our review, we find that the trial judge did not abuse his discretion in weighing the expert's testimony to whatever extent he may have done so.
On appellate review, the court's function is to determine whether the trial judge's findings were clearly wrong or manifestly erroneous. Johnson v. State Farm Mut. Auto. Ins. Co., 95-1027 (La. App. 5th Cir. 5/15/96), 675 So.2d 1161, 1163. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Rosell v. *444 ESCO, 549 So.2d 840, 844-845 (La.1989). The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether his conclusion was a reasonable one. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Stobart v. State, Through DOTD, 617 So.2d at 882. However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d at 844-45.
In this case, the trial judge determined that plaintiff proved by a preponderance of the evidence that Sam's breached its duty of exercising reasonable care for the safety of plaintiff and its duty of not exposing plaintiff to the unreasonable risk of being robbed at gunpoint on its property. Two permissible views of the evidence exist in this case and the trial judge's findings are reasonable based on the criminal history and the character of the area. Thus, we find that the trial judge did not commit manifest error in finding Sam's liable.
The next issue is whether the award for mental distress damages is excessive. Sam's asserts that the award is excessive because plaintiff did not miss any work and did not seek any type of counseling for her emotional distress.
Only after articulated analysis of the facts discloses an abuse of discretion may the appellate court consider an award of damages either excessive or insufficient. Bostwick v. M.A.P.P. Industries, Inc., 97-791 (La.App. 5th Cir. 12/30/97), 707 So.2d 441, 447; Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993); Reck v. Stevens, 373 So.2d 498, 501 (La.1979). In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Theriot v. Allstate Ins. Co., 625 So.2d at 1340. The discretion vested in the trier of fact to determine an appropriate award of damages is great. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993). Thus, an appellate court should rarely disturb an award of general damages. Id. at 1261. As the court stated in Youn, "[R]easonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." Youn v. Maritime Overseas Corp., 623 So.2d at 1261; See also: Tartar v. Hymes, 656 So.2d at 756, 760-761.
Plaintiff and her husband had been married for 41 years at the time of trial and had 2 grown children. Her husband is semi-retired. Plaintiff testified that she was terrified when the robber grabbed her ankle and she saw the gun pointed at her. She begged for her life, and fortunately, the robber did not shoot her. She was extremely upset and crying. She thought that she was having a stroke because her head was pounding. She is now afraid to go out alone at night and thinks about the incident often. She testified that she had nightmares and was unable to sleep after the incident. Plaintiff feels lucky to be alive.
Plaintiff and her husband live in Covington, but belonged to Chateau Country Club. After the incident, plaintiff resigned from the country club that she had enjoyed for over 19 years, because she did not want to be in the area of Sam's. She does not go out by herself at night anymore and describes herself as a nervous *445 wreck. In addition, she was extremely distressed to lose her only expensive pieces of jewelry that had been given to her over the years by her husband and, which she had hoped to leave to her daughter. Plaintiff did not miss any work due to this incident, but she only worked part-time, 3 days a week. Based on the evidence, we find that the trial judge did not abuse his discretion in the award of damages.

PLAINTIFF'S APPEAL
Plaintiff asserts that the trial judge erred in apportioning fault between Sam's and the criminal, an intentional tortfeasor. Sam's contends that La. C.C. art. 2323 requires the apportionment of fault among all tortfeasors, party or non-party, negligent or intentional.
In Miles v. Louisiana Landscape Specialty, Inc., 97-118 (La.App. 5th Cir. 6/30/97), 697 So.2d 348, 350-351, we found that comparative fault is not applicable to the intentional tort of sexual assault and battery of a minor. In that case, we did not discuss Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94), 650 So.2d 712, 720 (La.1994).
In Veazey, the issue was whether the trial court correctly refused to submit a jury interrogatory that would allow the jury to apportion fault between the negligent defendant and a criminal non-party. In that case, plaintiff sued the apartment complex management company for damages after she was raped in her apartment. In a lengthy opinion analyzing the law of comparative negligence, the court concluded that such an apportionment could be made, but only on a case by case basis, "bearing in mind the public policy concerns discussed herein." Veazey v. Elmwood Plantation Associates, Ltd., 650 So.2d at 720. The public policy concerns were succinctly listed in Green v. USAA Cas. Ins. Co., 95-0742 (La.App. 4th Cir. 1/19/96), 668 So.2d 397, 399-400. There, plaintiff was raped when the criminal got into her apartment from a sliding door left open by others whom she sued. The Fourth Circuit stated:
The Veazey court listed three categories of public policy concerns that should be considered by the trial court when making its determination:
1. Does the scope of the duty to the plaintiff encompass the exact risk of the occurrence which caused damage to the plaintiff? The Veazey court found that "as a general rule ... negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent." Veazey, 650 So.2d at 719.
2. Will the application of comparative fault principles reduce the incentive of the negligent tortfeasor to protect against the same type of situation occurring again in the future "given the fact that any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor"? Id.
3. Because the natures of intentional torts and negligent torts are fundamentally different, is this one of those many circumstances when a true comparison of fault between the two just is not possible? Id.
Sam's contends that La.C.C. art. 2323 enacted in 1996 basically overrules Veazey. It states:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or *446 persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
The only reference to intentional tortfeasor is in paragraph C. Since the legislature did not include a reference to intentional tortfeasor in paragraph A, which lists every other type of potential non-party, we find that it did not intend to overrule Veazey.
Considering the Veazey factors in this case, we find that the scope of the duty to the plaintiff encompassed the exact risk of the armed robbery which caused damage to the plaintiff and that this is one of those many circumstances when a true comparison of fault between the two is not possible. There is no comparison between a negligent failure to provide security and a criminal act of armed robbery. However, in answer to the second inquiry, Sam's here has already taken measures to protect against this happening again. Thus, the application of comparative fault principles would not reduce the incentive of this particular negligent tortfeasor to protect against the same type of situation occurring again in the future. Nevertheless, after considering the factors set forth in Veazey, the analysis in Green and our decision in Miles, we find that the trial judge erred in apportioning fault between Sam's and the criminal who intentionally robbed plaintiff. Thus, the judgment will be amended to find Sam's solely at fault.
Accordingly, the judgment of the trial court is hereby amended to find Sam's 100% at fault for the damages suffered by plaintiff. The judgment is otherwise affirmed.
Costs of appeal are to be paid by Sam's.
AFFIRMED IN PART, AMENDED IN PART AND AFFIRMED AS AMENDED.
EDWARDS, J., DISSENTS WITH REASONS.
EDWARDS, J., dissents with reasons.
After reviewing the testimony presented at trial, i believe that the trial court erred in reasoning that the parking lot at Sam's Wholesale Club in Kenner is a "high crime area." The officers called as witnesses all testified that Lincoln Manor Subdivision, located directly behind Sam's, was a "high crime area." However, they did not testify that the parking lot of Sam's was considered such. The distinction was made at trial, and the trial court failed to take this into account in rendering judgment. Therefore, it is my opinion that the trial court erred in awarding damages to the plaintiff based on this assertion.
I do not find that the defendant had assumed responsibility for any criminal misconduct which occurred in its parking lot and that the plaintiff had relied on this assumption. The majority cites the holding in Romaguera, supra, to support its position. It is my opinion that the facts of the present case distinguish it from our holding Romaguera and that the plaintiff in the present case did not rely upon the security in Sam's parking lot to her detriment.
In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the dury of not exposing such persons to unreasonable risks of injury or harm. Mundy, supra at 813. This duty does not extend to unforeseeable or unanticipated criminal acts by third person. Id. However, when a duty to protect *447 others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty. Id.
This Court relied on the Supreme Court's ruling in Mundy to formulate the opinion in Romaguera, holding that a duty to protect others from criminal misconduct had been assumed. I also rely on Mundy to formulate this dissent. It is my opinion that the facts and circumstances in Romaguera are distinguishable from the facts and circumstances in the present case.
In Romaguera, the restaurant had previously had an attempted armed robbery in the restaurant and because of that, had an armed security guard stationed only at the cash register. In the present case, only one of the crimes discussed by the plaintiff's expert was directly related to activities which occurred in Sam's parking lot and was a predatory crime. The testimony of the security guard stationed at Sam's further supported defendant's position that the parking lot was not a "high crime area." The security guard testified that he was hired for the sole purpose of protecting the cash office and he was unaware of any robberies in the parking lot. Therefore, it does not appear that the defendant has assumed responsibility for any criminal misconduct in its parking lot or that the plaintiff relied on such an assumption.
In summary, it is my opinion that the trial court committed manifest error in holding that the defendant was liable to the plaintiff for damages. The plaintiff failed to prove that Sam's parking lot is a "high crime area" and the plaintiff failed to prove that the defendant breached its duty of care by not providing security in the parking lot. The trial court erroneously relied on these assertions in formulating its judgment. For the above stated reasons, I respectfully dissent from the majority opinion.
NOTES
[1] There was no objection to the remedial efforts of Wal-Mart.