292 So.2d 878 (1974)
TAYLOR LUMBER COMPANY, INC.
v.
William P. FULLER et al.
No. 9758.
Court of Appeal of Louisiana, First Circuit.
March 18, 1974.
Rehearing Denied April 22, 1974.
Writ Refused May 31, 1974.
*879 Ledoux R. Provosty, Jr., Alexandria, for appellant.
Larry P. Boudreaux, Thibodaux, for appellees.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Taylor Lumber Company, Inc. (Lessor) brought this action to recover one month's rent in the sum of $3,500.00, together with reasonable attorney's fees, allegedly due pursuant to a written lease between Lessor and Fuller Forest Products, Inc. (Lessee) covering a sawmill located in Terrebonne Parish. In addition to Lessee, William P. Fuller (Fuller) was made defendant individually as Lessee's surety. Defendants reconvened for $8,131.44, claimed to be the value of improvements consisting of a large concrete slab erected and left on the leased premises. Reconveners also sought damages for alleged losses resulting from Lessor's breach of an oral agreement to furnish logs for the sawmill, and also for breach of a noncompetition provision contained in the lease. Lessor responded to Lessee's reconventional demand by stating its option not to retain the slab and requesting its removal from the premises. From a judgment in favor of Lessor in the sum of $4,300.00 (including rent and attorney's *880 fees), and rejecting Lessee's reconventional demands, defendants (Appellants) have appealed. We affirm.
In early 1970, or previously, William P. Fuller, an experienced sawmill operator, Lessee's alter ego, began looking for a sawmill to replace a similar enterprise he had operated in Oakdale, Louisiana, but had sold. Fuller contacted W. A. Taylor, a resident of Terrebonne Parish, concerning the possibility of constructing a sawmill in that area. Taylor, the alter ego of Taylor Lumber Company, Inc., and a related corporation, Taylor Logging Company, Inc., is an experienced logger with practically no experience in operating sawmills. For all practical purposes, Taylor is the only logger within a 40 to 50 mile radius of subject sawmill. When the parties first met, Taylor was in the process of constructing a sawmill for his own use on property rented by Taylor from a third party. The mill was located in or near a community known as Gray, Louisiana. However, Taylor decided against operating a mill of his own and sought to lease his mill to Lessee. After considerable negotiation, a lease was confected under date of June 30, 1970, whereby Lessor leased the mill to Lessee for a period of one year, with an option to extend the lease for an additional year, at a monthly rental of $3,500.00. The lease, which bears Fuller's personal endorsement, contains the following pertinent provisions:
"* * *
11. SURRENDER OF LEASED PREMISES: Upon termination of this lease by expiration of the term hereof or of any renewal or extension or upon termination for any other cause, Lessee will, at its own cost and expense, promptly return the leased premises and equipment thereon situated to Lessor in the same condition as received, reasonable wear and tear and normal depreciation excepted.
* * * * * *
15. COMPETING BUSINESS: Lessor and its President, William A. Taylor, agree that during the initial term of this lease and any extensions thereof, they shall not engage in any business that would tend to compete with Lessee's operation of the sawmill herein leased."
Lessee began immediate operation of the mill with the on hand inventory of logs and lumber purchased from Lessor, and with a supply of logs furnished by Lessor pursuant to an alleged verbal agreement which is disputed as hereinafter shown. Lessor furnished Lessee sufficient logs until December 19, 1970, after which date Lessor declined further deliveries to Lessee. Lessor continued its logging operations and the sale of logs to other sawmills in the general area.
Shortly after Lessee commenced operations, a siege of rainy weather set in. The yard area around the mill, especially where logs were stacked near the mill for sawing, became so wet and muddy that operation was seriously hampered. After discussions between Lessor and Lessee, it was agreed that Lessee would pave an area near the mill to remedy the adverse condition. It is conceded that Lessor approved the project and defrayed a small portion of the cost thereof. It is also conceded that Lessee expended the sum of $8,131.44 on the project.
When Lessor discontinued the sale of logs to Lessee in December, 1970, Lessee continued operation of the mill until expiration of the lease by purchasing such logs as he could from other available limited sources. Upon expiration of the lease, Lessee vacated the premises without paying the final month's rent. Lessor instituted this action for the rent. Lessee reconvened as above set forth.
Lessee concedes nonpayment of the rent claimed. The sole issues before the court are Lessee's claims for: (1) The value of the concrete slab erected on the leased premises; (2) damages due for Lessor's alleged breach of contract to supply logs, and (3) damages for alleged breach of the noncompetition agreement in the lease.
*881 In support of Lessee's claims for breach of contract, Fuller testified in essence that he would never have entered into a lease of the sawmill at the rent stipulated unless he had Taylor's personal assurance that sufficient logs would be made available to keep the mill in operation. Fuller explained that he was a stranger in the area and relied upon what he considered to be Taylor's word on the matter. He also stated that in December, 1970, Taylor served notice that no further log deliveries would be forthcoming. Fuller made such arrangements as he could with another local logger. It developed, however, that this other source was inadequately equipped to supply Fuller's needs. He also stated that, although Taylor stopped deliveries to Fuller's mill, Taylor continued selling logs to other sawmills in the vicinity. Fuller explained that because Taylor stopped delivering logs to Fuller's mill and continued to sell logs to other mills, Fuller lost approximately 35 days operation for which damages are sought. Fuller concedes that Taylor was not obligated to furnish logs exclusively to Fuller's mill. He does contend that Taylor agreed to furnish the mill with logs for the duration of the lease. He readily admits, however, that Taylor steadfastly refused to guarantee, either orally or in the lease, delivery of any fixed quantity of logs because Taylor stated he could not anticipate Fuller's needs.
Contradictorily, Taylor testified that he made no commitment to furnish Fuller logs for the mill. He steadfastly maintained he specifically refused to do so because he did not know Fuller's requirements. Taylor produced Clifton Morvant, and official of the City of Thibodaux, Mrs. Daisy Ledet, a Secretary, and Nelson Falgout, all of whom either witnessed the lease or were present when the document was signed. Each of said witnesses stated that, on this occasion, the question of supplying logs arose and Taylor made it clear he would not be obligated to furnish Fuller logs for the mill. In addition, Taylor produced his attorney, Woolen Falgout, who acted as Notary when the lease was executed. Mr. Falgout testified that he vividly recalled Taylor and Fuller agreeing at the time the lease was executed, that neither one would be obligated to sell to or buy logs from the other. We find the evidence overwhelmingly preponderates in favor of the conclusion that Taylor was not obligated to furnish logs for the mill in any amount.
Taylor admits that he discontinued selling logs to Fuller in December, 1970, and thereafter sold exclusively to competitive mills in the same area. Although Taylor did not further elaborate, he did say that some action of Fuller made him angry. Taylor also concedes that when Fuller's lease terminated, Taylor began operating the mill for his own account.
Relying upon Hirsch et al. v. Miller, La. App., 167 So.2d 539, and Deselle v. Petrossi, La.App., 207 So.2d 190, Appellants maintain Lessor and Taylor breached the noncompetition clause contained in the lease.
We initially note that noncompetition agreements covering specified areas for fixed periods of time do not per se contravene public policy. Such agreements, although enforceable, are strictly construed. Moormen & Givens v. Parkerson, 131 La. 204, 59 So. 122. See also, Hirsch v. Miller, above, and Deselle v. Petrossi, above, and cases therein cited. While counsel has not raised the point, we note that the agreement before us does not delineate a specified area in which competition is proscribed. Assuming, however, the agreement is enforceable, we find, for the reasons hereinafter indicated, no breach thereof in this instance. Although both Hirsch and Deselle, above, stand for the proposition noted, both are distinguishable from the case at hand. In Hirsch, above, defendant was found to have engaged in the precise business, namely, pest control, in which he had contracted not to compete. In Deselle, it was found that defendant violated an agreement not to compete in the operation of a seafood restaurant. *882 The court found that a seafood market subsequently run by defendant violated the agreement not to compete in that defendant was selling cooked seafood, including boiled shrimp, boiled crabs, boiled crawfish, gumbo and stuffed crabs. The court also found that, while defendant sold raw seafood, the sale of the cooked and ready to eat food, as an adjunct of the business, violated the noncompetition agreement.
Lessee does not contend that either Lessor or Taylor operated or had an interest in a sawmill, either directly or indirectly, during the lease term. Neither does Lessee contend that said parties engaged in the business of buying or selling sawmill products. It is suggested merely that Taylor's selling logs to Lessee's competitors, after stopping sales to Lessee, violated the noncompetition agreement. We disagree with this contention. We find the business of logging per se, that is, the cutting of timber and the buying and selling of logs for processing into lumber, is distinguishable from that of operating a sawmill for the conversion of logs into lumber. Although the businesses are related, they are not competitive. Each deals with a separate and distinct operation and undertaking.
Lessee contends the concrete slab erected on the premises was necessary to enable operation during wet weather. Lessee also maintains Lessor has elected to retain the improvement in that Lessor utilized same in the operation of the mill after Lessee's lease expired. On this premise, it is urged that Lessee is entitled to recover the fair price of the improvement. It is noteworthy that the lease itself makes no provision for disposition of improvements erected by Lessee. The agreement merely provides that Lessee shall return the premises to Lessor at the expiration of the lease in the same condition as Lessee received the property, usual wear, tear and depreciation excepted. Lessee's claim for improvements is founded on LSA-C.C. art. 2726, which states:
"The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it.
But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price."
Numerous decisions have interpreted Article 2726, above, to mean that, at the termination of a lease, the lessee has the right to remove any improvements placed on the leased premises, except those made with lime and cement, subject only to the qualification that lessee leave the premises in the same state in which it was received. These same authorities hold that improvements made with lime and cement may be retained by the lessor provided he pays a fair price therefor. The jurisprudence likewise establishes that a lessee may not compel a lessor to accept improvements made with lime and cement, but that the option to retain rests solely with lessor who may either accept the improvement and pay its fair price or compel lessee to remove same from the leased premises. Pecoul v. Auge, 18 La.Ann. 614; Dreyfuss v. Process Oil & Fuel Co., 142 La. 564, 77 So. 283; Superior Syndicate v. Willis, 155 La. 444, 99 So. 397; Riggs v. Lawton, 231 La. 1019, 93 So.2d 543.
Appellants contend, on authority of Riggs v. Lawton, above, that Lessor has elected to retain the concrete slab, and is therefore obligated to Lessee for its value. It is argued that Lessor's payment of part of the cost and use of the slab in operating the mill after Lessee's lease terminated, amounts to an election to retain. Riggs v. Lawton, above, was an action by a lessee to recover the value of a brick veneer room added to a rented room, the addition being used by lessee for an office. Lessor answered the suit denying any need for the addition, and asking for its removal from the leased premises. The court found that lessor had no need for the addition, made *883 no use thereof, and that the room had been constructed solely for lessee's convenience. On these findings, the court concluded lessor had elected not to retain the improvement. Appellants maintain that because Lessor herein operated the mill using the slab, Lessor has elected to retain and is bound for the value of the slab.
We think it obvious that the matter of a lessor's alleged retention of an improvement made with lime and cement is a purely factual determination to be made in the light of the circumstances of each case.
Under the terms of the present lease, Lessor could compel Lessee to remove all improvements placed on the premises and restore the mill and premises to the condition in which it was received, ordinary wear and tear excepted. In addition, Lessor enjoyed the privilege of retaining the concrete slab if he so elected. We find no such election in this instance.
It is true that upon termination of the lease, Lessor commenced operation of the mill and used the slab in question. However, no demand was made upon Lessor by Lessee for the value of the slab until after Lessor resumed operation of the mill and filed suit to recover the unpaid rent due for the final lease month. Mere use by a lessor of an improvement, either for its intended purpose or some other function, does not necessarily imply election to retain the work and pay its value. Also significant in this instance is the fact that Lessor is not the owner of the premises, but is himself a lessee. At the termination of his lease, Lessor may be faced with a demand from his lessor to remove the slab, an expense Lessor may not wish to bear. The jurisprudence clearly indicates that a lessee who makes improvements to leased premises with lime and cement, does so at his own risk knowing that he cannot compel lessor to pay the value of such improvements which lessor may elect not to retain. Consequently, if a lessee leaves such improvements in a position and condition so that the lessor may not resume lessor's prior operations without using the improvements, the mere resumption of business with such use does not per se constitute an appropriation and use tantamount to an election to retain. Under the circumstance, we find that Lessor made his election in response to Lessee's reconventional demand wherein Lessor opted that Lessee remove the slab.
The judgment of the trial court is affirmed at Lessee's cost.
Affirmed.