814 So.2d 13 (2001)
Wendy Pistorious ANNINA
v.
Roy & Eva Lynn ESCHETTE
No. 2000 CA 1892.
Court of Appeal of Louisiana, First Circuit.
November 21, 2001.
Writ Denied March 8, 2002.
*14 Nita R. Gorrell, Hammond, for Plaintiff, Appellee Wendy Pistorious Annina.
Duncan S. Kemp, III, Hammond, for Defendants, Appellants Roy and Eva Lynn Eschette.
Before: GONZALES, KUHN, CIACCIO, JJ.[1]
CIACCIO, J.
This appeal arises following a judgment in favor of plaintiff-lessee, ordering defendants-lessors to reimburse her for amounts expended on improvements to the leased property.

FACTS
Wendy Annina and her late husband George leased a tract of land in Tangipahoa Parish from Roy and Eva Lynn Eschette. The Anninas initially planned to purchase the land through a lease-purchase arrangement with the Eschettes, but details of the lease-purchase agreement were never documented and the parties never finalized the purchase.[2] Based on a verbal agreement with the Eschettes, the Anninas leased the property for $100 per month.
In February 1995, the Anninas moved their mobile home onto the Eschettes property. Prior to that time, they installed a septic tank on the property and brought in loads of dirt to build up the area where their mobile home would sit and to fill in any low areas. When conflict arose between the Anninas and their neighbors over use of an existing driveway, the Eschettes paid for materials to build a new driveway. The Anninas then reimbursed the Eschettes for their expense. The Anninas also filled a ditch to prevent the neighbors' effluent from flowing *15 onto the leased property and built a fence to keep the neighbors' geese from coming into their yard.
Mr. Annina died in February 1998 and that October, the Eschettes evicted Mrs. Annina for failure to pay rent. When Mrs. Annina vacated the property, she took only her mobile home. She did not remove the improvements that she and her husband had made to the leased premises. The Eschettes then leased the property to Mrs. Eschette's sister.
In March 1999, Mrs. Annina filed suit individually and as administratrix of her husband's estate seeking reimbursement for $8,287.07 in expenses incurred in making improvements to the property, specifically the fence, driveway, septic system and fill dirt.[3] Just before trial, defendants demanded that Mrs. Annina remove the improvements from the property, but she took no action to comply.
In his reasons for judgment, the trial judge found that under LSA-C.C. art. 465, the fill dirt, septic system and materials used to construct the driveway were "[t]hings incorporated into a tract of land... so as to become an integral part of it" and thus component parts of the land. Applying LSA-C.C. art. 495, the trial court determined that defendants initially could have demanded that plaintiff remove the improvements, but lost that right after renting the property to Mrs. Eschette's sister and therefore making personal use of those improvements.
The court further found that re-leasing the property constituted an election by defendants to keep the improvements. Thus, defendants were obligated to pay to plaintiff either the current value of the materials and workmanship or the enhanced value of the immovable. The court determined that the cost of the driveway, septic tank and fill dirt was $7,582.50, but that the property's enhanced value was only $4,200 as a result of these improvements. Thus, the court ruled that defendants should pay the lesser of these amounts plus $2,000 in court costs. The court refused to classify the fence as an improvement, stating that "under the circumstances in this case[,] it is not necessary."
Defendants appeal the trial court's judgment, alleging that the trial court erred: 1) in failing to maintain the exception of no cause of action; 2) in failing to properly apply LSA-C.C. art. 495; 3) in holding that renting the property after plaintiff's eviction barred defendants from demanding removal of the improvements; 4) in finding that defendants elected to keep the improvements by renting the property to a new tenant; and 5) in relying on plaintiff's property valuation expert and in assessing costs related to his testimony and preparation for trial.[4]

Exception of No Cause of Action
Defendants contend that the trial court erred in denying their peremptory exception raising the objection of no cause of action. This exception questions "whether the law extends a remedy to anyone under the factual allegations of the petition." McElwee v. State Through the Department of Transportation and Development, 98-0223 (La.App. 1 Cir. 2/19/99), 729 So.2d 695. Its purpose is to determine the legal sufficiency of the petition. In other words, the court must determine whether the law affords plaintiff a remedy *16 under the facts pleaded in the petition. Id., at 697. When considering the exception, the court must accept the facts pleaded in the petition as true. Id.
When a petition states a cause of action as to any ground or portion of the demand, an exception raising the objection of no cause of action must be overruled. Any doubts are resolved in favor of the sufficiency of the petition. Id.
According to plaintiff's petition, she and her husband rented property from defendants and incurred expenses associated with making improvements to that property. Plaintiff seeks reimbursement in accordance with LSA-C.C. arts. 493 through 497.
Article 493. Ownership of improvements
Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.
When the owner of the buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner.
. . . . .
Article 493.2. Loss of ownership by accession; claims of former owner
One who has lost the ownership of a thing to the owner of an immovable may have a claim against him or against a third person in accordance with the following provisions.
. . . . .
Article 495. Things incorporated in, or attached to, an immovable with the consent of the owner of the immovable
One who incorporates in, or attaches to, the immovable of another, with his consent, things that become component parts of the immovable under Article 465 and 466, may, in the absence of other provisions of law or juridical acts, remove them subject to his obligation of restoring the property to its former condition.
If he does not remove them after demand, the owner of the immovable may have them removed at the expense of the person who made them or elect to keep them and pay, at his option, the current value of the materials and of the workmanship or the enhanced value of the immovable.
Defendants contend that plaintiff had no cause of action until they demanded removal of the improvements. Such a finding would be ludicrous and would hold future similarly-situated plaintiff's in limbo. Plaintiff made improvements to defendants' tract of land. The improvements enhanced the value of the property. Thus, plaintiff may be entitled to reimbursement and therefore had a valid cause of action in accordance with LSA-C.C. art. 495.

LSA-C.C. art. 495
Defendants do not argue that LSA-C.C. art. 495 is inapplicable to this case, but merely that the trial court erred in applying the provisions of this article. Defendants, as owners of the tract of land, had the option of either retaining the improvements or demanding their removal at plaintiff's expense.
*17 Defendants rely on prior jurisprudence in support of their contention that using the improvements does not necessarily constitute an election to "keep and pay" for the improvements. But each case relied upon by defendants is easily distinguishable. This court, in Taylor Lumber Company, Inc. v. Fuller, 292 So.2d 878 (La.App. 1st Cir.), writ denied, 294 So.2d 839 (La.1974), noted the significance of the lessor not being the owner of the premises. Thus, at the end of his lease, the lessor could be faced with a demand to remove the improvement at his expense. In the case now before us, defendants/lessors own the property and face no such future penalty.
Likewise, in Riggs v. Lawton, 231 La. 1019, 93 So.2d 543 (1957), there was no evidence that the owner had made use of the improvements. And Pylate v. Inabnet, 458 So.2d 1378 (La.App. 2d Cir.1984) presented a factual scenario in which the lessor was opposed to cosmetic improvements that he found unnecessary. In the instant case, defendants consented, even participated, in constructing the improvements to the property.
Whether a lessor's acts constitute an election to keep and pay for improvements left by a lessee is a factual determination to be made in light of the circumstances of each case. Taylor Lumber Company, Inc. v. Fuller, 292 So.2d at 883. Thus, although defendants attempt to phrase this assignment of error as a legal question, the issue before us is actually factual.
A trial court's findings of fact may not be reversed absent manifest error or unless clearly wrong. Stobart v. State of Louisiana through DOTD, 617 So.2d 880 (La.1993). Furthermore, the appellate court should not disturb a trial court's reasonable inferences of fact upon review. Id., at 882. The appellate court must review the entire record to determine whether the trial court's conclusions were reasonable. If the findings were "reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id., at 882-883.
Plaintiff testified that when evicted, Mrs. Eschette told her that she could not take anything with her except the mobile home. Mr. Eschette testified that he never told plaintiff that she could not remove the improvements, but he did not know what his wife may have told her. The trial court evidently weighed the evidence and decided that defendants' actions constituted a decision to keep and pay for the improvements made by the Anninas to this tract of land. We can not say that this finding was clearly wrong; thus, this assignment of error has no merit.
Two days before trial, defendants sent plaintiff a letter demanding that she remove the improvements. We will not consider this specious attempt to influence the outcome of this case.

Expert Testimony
Defendants' final contention is that the trial court erred in relying on the valuation testimony of plaintiff's expert. The trial court has great discretion in whether to qualify an expert witness and has wide latitude in determining whether that expert has the competence, background and experience to qualify. Posecai v. Wal-Mart Stores, Inc., 98-1013 (La. App. 5 Cir. 3/30/99), 731 So.2d 438, reversed on other grounds, 99-1222 (La. App.11/30/99), 752 So.2d 762. Once the expert is allowed to testify, the trier of fact has great discretion in assessing his credibility and accepting or rejecting his opinion. LSA-C.E. art. 702. Included in the *18 credibility determination is the method by which the expert reached his conclusions. Posecai v. Wal-Mart Stores, Inc., 731 So.2d at 443.
Here, the trial court considered all of the evidence and apparently accepted the valuation testimony of plaintiff's expert. After our review, we can not say that the trial court was clearly wrong in giving weight to the expert testimony. Thus, this assignment of error has no merit.

CONCLUSION
For the reasons noted above, we affirm the trial court's judgment ordering defendants to pay $4,200 to plaintiff for improvements to the property plus $2,000 for court costs. All costs of this appeal are assessed to defendants.
AFFIRMED.
KUHN, J., dissents & assigns reasons.
KUHN, Judge, dissenting.
The majority interprets La. C.C. art. 495 as providing a lessee with the right to demand compensation from the owner of the property for improvements incorporated into the property by the lessee. This interpretation affords the lessee with greater rights than the owner of the property and is not supported by the jurisprudence.
Under La. C.C. art. 493.1, "Things incorporated in or attached to an immovable so as to become its component parts ... belong to the owner of the immovable." Upon their incorporation into the property by the Anninas, the fill dirt, the septic system, and the materials used in the construction of the driveway became component parts of the land. La. C.C. art. 465. With respect to the person who incorporates things into the immovable with the owner's consent, Article 495 provides only that he may remove them subject to the obligation of restoring the property. The Anninas' conduct of making these improvements on the property and then leaving them behind upon eviction did not result in the Eschettes being required to pay for them. Upon her eviction, Mrs. Annina only had the right to remove these improvements and had no right to demand payment for these improvements.
The jurisprudence establishes that a lessee who makes improvements to leased property has the right to remove them but does not have a right to demand compensation for them. Riggs v. Lawton, 93 So.2d 543, 545, 231 La. 1019, 1024-1025 (1957) (interpreting former La. C.C. art. 2726)[1]; Pylate v. Inabnet, 458 So.2d 1378, 1390-1391 (La.App. 2d Cir.1984) (interpreting current La. C.C. art. 495). In the case of improvements that become incorporated into the immovable, the lessee makes such improvements at his own risk knowing that he cannot compel the lessor to pay the value of such improvements and that the lessor may elect not to retain them. Taylor Lumber Co., Inc. v. Fuller, 292 So.2d 878, 883 (La.App. 1st Cir.), writ denied, 294 So.2d 839 (La.1974) (interpreting former La. C.C. art. 2726). As a result, *19 if a lessee leaves such improvements in a position and condition so that the lessor may not resume the use of his property without using the improvements, the mere use of the property does not constitute an election to retain the improvements. Id.; Pylate v. Inabnet, 458 So.2d at 1391.
On the other hand, Article 495 provided the Eschettes, as owners of the property, with the option of having these improvements removed at Mrs. Annina's expense or electing to keep them and pay for them. The trial court and the majority of this court have erred by finding that the Eschettes elected to keep these improvements and forfeited their right to have the improvements removed when they released the property after Mrs. Annina's eviction. The record in this case contains no evidence that the Eschettes elected to retain the improvements made by the Anninas. To the contrary, they demanded the removal of the improvements by letter. Although the demand occurred only two days prior to the trial, Article 495 does not impose a time restriction on when the owner of the property can exercise this option. Except for the fact that the Eschettes have re-leased the property, they have not used the improvements. Due to the nature of the improvements, it is virtually impossible for the new lessee to use the property without using the improvements. Such use by the new lessee does not constitute an election to retain the improvements by the Eschettes. Taylor Lumber Co., Inc. v. Fuller, 292 So.2d at 883; Pylate v. Inabnet, 458 So.2d at 1391.
Although Article 495 provides the builder of the incorporated things with the right to remove them, Mrs. Annina did not make any attempt to remove the septic system, the driveway or the fill dirt. It is likely that Mrs. Annina made no attempts to remove these items because, due to their nature, they would be difficult to remove and perhaps be of little value to her now. Since Mrs. Annina has not established that the Eschettes have elected to keep these improvements, she is not entitled to be reimbursed for them. Although Mrs. Annina is not entitled to demand payment for these improvements, she and her husband received the benefit of these improvements while residing on the property. When they incorporated these improvements into property that they did not own, they should not have assumed that they would be entitled to remuneration for these improvements in the event that they no longer occupied the property.
Although the trial court and the majority declined to address the fence improvement, it should have been classified as an "other construction permanently attached to the ground" within the meaning of Article 493. See Carriere v. Bank of Louisiana, 95-3058 (La.12/13/96), 702 So.2d 648, 673; Guzzetta v. Texas Pipe Line Co., 485 So.2d 508, 511 (La.1986); Melerine v. State, XXXX-XXXX (La.App. 4th Cir.11/8/2000), 773 So.2d 831, 837. Since the Anninas constructed the fence with the consent of the Eschettes, Article 493 dictates that the fence belonged to the Anninas when it was constructed. Yet Article 493 also contemplates the occurrence of a time when the maker of a construction "no longer has the right to keep [the construction] on the land of another." When that time occurs, such as lease termination, the maker of the construction is given statutory authority to remove the construction "subject to his obligation to restore the property to its former condition." But if the maker does not do so within ninety days after written demand by the landowner, the landowner acquires ownership of the construction and owes nothing to the former owner of the construction. Thus, this article does not give the maker of the construction the right to recover the value of the construction if he does not remove it.
*20 In the instant case, Mrs. Annina removed only her mobile home and a utility pole when she vacated the Eschette's property upon eviction. Mrs. Annina testified that Mrs. Eschette told her she could not remove the fence. Although Mrs. Eschette did not testify, Mr. Eschette testified he did not tell Mrs. Annina she could not remove the fence. Regardless of what she was told by the Eschettes, Mrs. Annina made no attempt to remove the fence. The Eschettes made written demand for Mrs. Eschette to remove the fence, along with the other improvements, two days prior to trial. Since the ninety-day period had not transpired, the trial court could not have determined ownership of the fence. However, the court could have disposed of Mrs. Annina's sole claim regarding the fence: that she was entitled to be compensated for its value or expense. Regardless of who is the owner of the fence under Article 493, Mrs. Annina is not entitled to recover any amount for this improvement.
For these reasons, I would reverse the trial court's judgment. Accordingly, I dissent.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge, retired from the Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In its reasons for judgment, the trial court noted that Mrs. Annina understood that the verbal lease-purchase agreement was legally unenforceable and that she made no attempt to enforce it.
[3] Mrs. Annina also sought compensation for disturbance of peaceable possession, but later waived this claim.
[4] Defendants failed to brief their argument regarding the assessment of costs. We therefore consider the issue abandoned. See Uniform Rules, Courts of Appeal, Rule 2-12.4.
[1] The general concepts now addressed in Article 495 were formerly addressed in La. C.C. art. 2726, which provided as follows:

The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it.
But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price.
Current Article 495 is applicable to all items that become "component parts" and does not delineate a particular result for items "made with lime and cement." But the rights of a lessee to claim reimbursement remain limited to those instances where the lessor has elected to retain the improvement rather than demand its removal. Pylate v. Inabnet, 458 So.2d at 1390-1391.