STEWART, J.
| lessor, Billy R. Shirley, appeals the trial court’s grant of the claim of lessees, Donnie and Wanda Frazier, seeking reimbursement for improvements made to Mr. Shirley’s property. For the reasons set forth below, we affirm the judgment of the trial court.
FACTS
On October 15, 2003, Billy R. Shirley filed a suit against Donnie and Wanda Frazier for $175.00 in unpaid rent and $1,725.00 in damages regarding the Frazi-ers’ lease of Mr. Shirley’s property located at 1327 Prairie Road in Monroe, Louisiana. The Fraziers filed an answer in proper person generally denying Mr. Shirley’s claims for past due rent and damages. After retaining an attorney, the Fraziers filed a reeonventional demand in which they claimed that they had made various improvements to the leased premises with the consent of Mr. Shirley and were thus entitled to the current value of the materials and of the workmanship or the enhanced value of the immovable. In the alternative, the Fraziers requested damages for Mr. Shirley’s unjust enrichment by the improvements they made.
The matter came for trial on January 20, 2005, and after the taking of evidence, the trial court took the matter under advisement. On February 22, 2005, the trial court signed a judgment awarding Mr. Shirley $175.00 in unpaid rent and awarding the Fraziers $750.00 on their reeonventional demand. Mr. Shirley appealed. On appeal, he assigns error only to that portion of the judgment granting relief on the Fraziers’ reeonventional demand.
| ¡>Tbe evidence introduced at trial indicates that the Fraziers and Mr. Shirley made an arrangement in December of 1997 for the Fraziers to lease the house for $150.00 per month. By all accounts, the house was in poor condition. Accordingly, the parties also agreed that the rent for the first three months would be waived in exchange for the Fraziers making unspecified repairs to the rental property. The Fraziers indicated that these repairs included the installation of wall paneling in two separate rooms, plugging holes in the walls and ceiling, fixing a window air conditioner, and repairing various plumbing problems.
In addition to the repairs made to the interior of the house, the Fraziers allegedly made several improvements to the property for which they claimed they were due reimbursement from Mr. Shirley. They erected a porch on the back of the house, *625 installed a 220 volt line, breaker box and circuit breakers in the house to run appliances, built a dog pen using the sides of an old cotton trailer, built two pens for holding livestock, and installed a “shed” fashioned from a used vertical poly-tank.
Mr. Frazier testified that he supplied the materials and built the back porch with Mr. Shirley’s permission. Mr. Shirley did not contradict this assertion. However, no evidence was presented as to the value of the materials or the labor required to build the porch.
While there appears to be no dispute that some form of electrical work was performed on the rental property, which involved the installation of circuit breakers and a circuit breaker box, there was no clear evidence as to whether the work was done with Mr. Shirley’s consent, and there is no ^evidence whatsoever in the record as to the present value of the materials and/or the labor used in the installation.
Mr. Shirley testified that he acquiesced in the building of the two livestock pens. When the first pen was built, he alleged he told the Fraziers that they could use the land free of charge if they installed the fence at their cost. When the second pen was built, he claims to have paid for one-half of the materials. Both the Fraziers and Mr. Shirley kept livestock in these pens. No evidence was provided as to the value of the materials or the labor required to erect either fence.
As to the poly-tank shed, the record indicates that it was a 5400-gallon vertical tank which Mr. Frazier cut from top to bottom to remove approximately one third of the tank. He then turned the tank on its side so it could serve as a storage shed. Mr. Frazier then cut a doorway into one end of the tank and secured the tank to the ground by driving 2x4 stakes into the ground and securing them to the sides of the tank with screws. Mr. Shirley testified that he helped Mr. Frazier haul the tank onto the property. While both of the Fraziers testified that a new poly-tank would cost around $2,000.00, Mr. Frazier testified that used poly-tanks, such as the tank at issue, could be obtained at farm equipment sales for anywhere between $500.00 and $750.00. Mr. Shirley set the value of the poly-tank in his testimony at $100.00.
There was conflicting testimony as to whether Mr. Shirley forbade the Fraziers from removing the poly-tank shed when they were evicted from the property. A neighbor, Dennis Mike Moore, testified that he was told by Mr. | ¿Frazier that he could have the poly-tank shed. However, when he went to pick it up he was told, presumably by Mr. Shirley, that he could not have it because it was a “non-movable.” However, Mr. Moore testified that he was later allowed to take the tank after he had performed some land-clearing for Mr. Shirley. Mr. Frazier testified that Mr. Shirley had refused to let him take the tank when he left. Mr. Shirley, on the other hand, testified that Mr. Frazier had simply elected to leave it.
The Fraziers also erected a dog pen out of the sides of an old cotton trailer. Mr. Frazier claimed that he had purchased the sides from the man who owned the trailer. He testified that the value of the frame was about $250.00. Mr. Shirley testified that “[w]e usually used it for a dog pen” indicating his tacit consent to the installation. He testified the materials used probably had a scrap value of $35-$40. Mr. Frazier testified that like the shed, Mr. Shirley prohibited him from removing the dog pen claiming that it was anchored to his property.
On appeal, Mr. Shirley assigns error to the trial court’s award of $750.00 to the Fraziers to reimburse them for the items *626 described. Specifically, he argues the following:
(1) He should owe no reimbursement for the fence because its value was the price for allowing the Fraziers to use his acreage, and the pen was left in an unusable state by the Fraziers;
(2) He should owe no reimbursement for the installation of the circuit breaker because it was removed by the Fraziers when they left;
|ñ(3) The value assigned by the Fraziers to the cotton trailer frame was excessive in light of the fact that it is rusted, and he has no use for it; and,
(4) The value assigned to the poly-tank is excessive since the item was used and damaged, and the Fraziers got it for free. He also complains that he has not been enriched by this item, because the Frazi-ers gave it away to Mr. Moore who has since removed it from the property.
Although the Fraziers assign error in the trial court’s judgment on the award of past due rent, the Fraziers have failed to answer Mr. Shirley’s appeal or file a separate motion to appeal the trial court’s judgment; thus, we will not consider the assignment raised in their brief.
DISCUSSION
There are two civil code articles that settle the dispute before us: La. C.C. arts 493 and 495. La. C.C. art. 493 provides:
Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent. When the owner of the buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner.
La. C.C. article 495 provides:
One who incorporates in, or attaches to, the immovable of another, with his consent, things that become component parts of the immovable under Article 465 and 466, may, in the absence of other provisions of law or juridical acts, remove them subject to his obligation of restoring the property to its former condition.
If he does not remove them after demand, the owner of the immovable may have them removed at the expense of the | (¡person who made them or elect to keep them and pay, at his option, the current value of the materials and of the workmanship or the enhanced value of the immovable.
Because no reasons for judgment were given, we do not know what improvements the Fraziers were due reimbursement for and in what amounts. However, we start by noting that the record is devoid of any evidence to support the value of the materials or labor required to erect the back porch and the livestock enclosures or to install the 220 volt line, breaker box and circuit breakers. Because the Fraziers failed to prove the current value of these alleged improvements, no award could be made for them even if they were otherwise reimbursable. Accordingly, the focus of our review is whether the record supports the trial court’s judgment when the discussion is limited to the polytank shed and the dog pen fashioned from the cotton trailer.
*627 La. C.C. art. 495 affords a lessee the right to remove improvements or attachments made to the immovable of another with his consent subject to the obligation to restore the property to its former condition after removal. The second paragraph of the article allows the owner of the immovable to demand the removal of the items by the improver, and upon his failure to do so, to remove them himself at the cost of the improver. However, the article also allows the owner to elect to keep, the improvements and pay the improver the value of the improvements. Smith v. State, Department of Transportation and Development, 2004-1317 (La.3/11/05), 899 So.2d 516. Whether or not a lessor has elected to keep said improvements is a factual determination made upon the individual circumstances of the case. Annina v. Eschette, 00-1892 (La.App. 1st Cir.11/21/01), 814 So.2d 13, writ denied, 01-3375 (La.3/8/02), 811 So.2d 880.
A literal reading of this article indicates that an election to keep the improvements for which the improver must be compensated must first be preceded by a demand. However, while the article does not require a lessor to pay a lessee for improvements if the lessee abandons the improvements upon the termination of the lease, see Pylate v. Inabnet, 458 So.2d 1378 (La.App. 2d Cir.1984), denying a lessee the right to remove improvements upon termination of the lease could be construed as an election to keep the improvements. Smith, supra; and, Annina, supra.
An appellate court’s function is to review the entire record to determine whether the trial court’s conclusions were reasonable. If so, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. While Mr. Shirley denied wanting or demanding that these two items be left on the property, his testimony was contradicted by Mr. Frazier who testified that Mr. Shirley claimed the items to be anchored to his property. Mr. Frazier’s version of events was supported by the testimony of Mr. Moore, who claimed that Mr. Shirley denied him permission to remove the poly-tank and described it as a “non-movable.” Thus, the record supports the conclusion that Mr. Shirley prevented the Fraziers from taking the cotton trailer, dog pen, and the poly-tank shed.
Having found that the trial court’s conclusion to reimburse the Frazi-ers for improvements made to Mr. Shirley’s property was not | Smanifestly erroneous, the only remaining issue is whether the value assigned to those improvements was within the trial court’s great discretion in determining damage awards. The record must clearly show that the fact finder abused its discretion in making an award, before the award may be disturbed. Brown v. Williams, 36,863 (La.App.2d Cir.7/31/03), 850 So.2d 1116. An appellate court’s function is not to determine whether a different damage award may have been more appropriate, but whether the trial court’s award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trial court. Jackson v. A.L. & W. Moore Trucking, 609 So.2d 1064 (La.App. 2d Cir.1992).
The record indicates that the value of the poly-tank shed testified to by the parties ranged from $100.00 to $750.00. The value assigned to the cotton trailer dog pen ranged from $35.00 to $250.00. While we do not know the breakdown assigned to each by the trial court, the total of $750.00 awarded by the trial court for all reimbursable improvements is clearly within the range of values which the record would support. Accordingly, we find no error in *628 the trial court’s award of $750.00 for the cost of materials and labor expended for the improvements made to Mr. Shirley’s property.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.